## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSEPH FREDERICKS,** | Civ. No. 2:11-05363 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **TOWNSHIP OF WEEHAWKEN**, *et al.*, | |
| **Defendants.** | |

### WILLIAM J. MARTINI, U.S.D.J.:

Plaintiff Joseph Fredericks, a public employee, brings this whistleblower action against the Township of Weehawken ("the Township"), its Mayor, Richard Turner, and its Town Manager, James Marchetti (collectively "Defendants"). Fredericks alleges, *inter alia*, that his compensation was withheld after he submitted a certification in a separate civil rights case pending against these same Defendants. The certification describes a host of illegal actions on the part of Mayor Turner. Fredericks brings claims under the New Jersey Conscientious Employee Protection Act ("CEPA"), 42 U.S.C. § 1983, and the New Jersey Civil Rights Act. Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion is **GRANTED** in part and **DENIED** in part.

### I.    BACKGROUND[1]

On October 23, 2008, Police Lieutenant Richard DeCosmis filed a civil rights lawsuit against the Township of Weehawken ("the Township") and its

---

[1] The facts presented in this opinion are derived from Fredericks's complaint, as well as the documents that form the basis of his claims. Fredericks's allegations are presumed true for the purposes of this motion. See *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court notes that Fredericks's opposition brief relies partly on facts that were not alleged in either the Complaint or the Certification. The Court will disregard these allegations.

mayor, Richard Turner.  Town Manager Marchetti was subsequently added as a plaintiff.  On September 20, 2010, DeCosmis filed a brief attaching the sworn certification ("the Certification") of Joseph Fredericks, Tax Collector of Weehawken and Plaintiff in the instant suit.  *See* Certification of Joseph Fredericks, *DeCosmis v. Weehawken*, Civ. No. 8-5221 (D.N.J. Sept. 20, 2010), ECF No. 45-1.  The Certification portrays Mayor Turner as a behind-the-scenes power-broker who exerts improper influence on Township governance.  Worse, the Certification alleges that Mayor Turner has knowingly ordered the assessment of illegally high taxes.  Certification  ¶¶ 6, 8.  It further states that Town Manager Marchetti has been unable or unwilling to act on Fredericks's complaints about the Mayor.  *Id.* ¶ 9.

Fredericks claims that just weeks after he signed the Certification, he fell victim to six acts of retaliation.  First, he learned that he could not go to one educational seminar and that his voucher for another seminar had been withdrawn.  The Township had supported his attendance at both events for roughly 15 straight years.  Second, Fredericks was denied promised back-pay for certain tax-abatement work.  Third, he was passed over for a raise he was entitled to as a matter of law.[2]  Fourth, Fredericks was told to route all of his communications through the Township's CFO.   Fifth and sixth, his compensation was threatened by Town Manager Marchetti on two separate occasions.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see*

---

[2] The Court takes no position at this time about Fredericks's entitlement to a raise.

*also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

"In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" *Banco Popular v. Ghandi*, 184 N.J. 161 (2003) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir.), *cert. denied*, 543 U.S. 918, (2004)). A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." *Lum*, 361 F.3d at 222 n.3 (citing *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *see also Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."). Though Fredericks failed to attach the Certification to his Complaint, the Court will nevertheless consider it. That document is both integral to the Complaint and explicitly relied upon by the Complaint. Most obviously, it is the speech for which Fredericks alleges retaliation. *See* Compl. ¶¶ 9, 10, ECF No. 1. The Defendants here are all parties in the DeCosmis litigation, and they are unquestionably familiar with this document.

## III.   DISCUSSION

Fredericks filed a five count Complaint. Count I is a whistleblower claim under the New Jersey Conscientious Employee Protection Act ("CEPA"). Counts II and III are 42 U.S.C. § 1983 claims alleging violations of Fredericks's First Amendment rights. Counts IV and V are claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, alleging violations of the New Jersey Constitution's rights to speech and to petition the government for redress of grievances. For the reasons set forth below, the motion to dismiss is **GRANTED** in part and **DENIED** in part.

Before turning to the respective Counts, the Court pauses to address two issues raises by Defendants. First, Defendants correctly point out that Fredericks may not pursue punitive damages against the Township under Section 1983. *Newport v. Fact Concerns, Inc.*, 453 U.S. 247, 271 (1981). Second, Defendants argue that by filing a CEPA claim, Fredericks waived his state law claims for hostile work environment and infliction of emotional distress. Defs.' Br. 7.

Fredericks's opposition clarifies that he is not alleging any independent claims for hostile work environment and infliction of emotional distress.

### A. CEPA (Count 1)

CEPA is a whistleblower statute. "Its purpose is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Township Bd. of Educ.*, 138 N.J. 405, 431 (1994). The Supreme Court of New Jersey describes CEPA as "remedial legislation" meant to be construed "liberally to effectuate its important social goal." *Id.* The elements of a cause of action under CEPA are:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19–3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Winters v. North Hudson Reg'l Fire & Rescue*, 212 N.J. 67, 89 (2012). "Adverse employment action" generally means "completed . . . personnel actions that have an effect on either compensation or job rank" or that amount to "effective discharge." *Caver v. City of Trenton*, 420 F.3d 243, 255 (3d Cir. 2005) (internal citation omitted). "When a plaintiff does not allege a discharge, suspension or demotion, 'conduct must be serious and tangible enough to materially alter the employee's terms and conditions of employment or adversely affect her status as an employee.'" *Cortes v. Univ. of Med. & Dentistry of N.J.,* 391 F. Supp. 2d 298, 312 (D.N.J. 2005) (internal citation omitted).

CEPA carries a one-year statute of limitation. N.J.S.A. 34:19-5. To determine when the limitations period begins, the Supreme Court of New Jersey looks to the framework set forth in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 122 (2002). *See Green v. Jersey City Bd. of Educ.*, 177 N.J. 434, 448 (2003). "Morgan established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). A claim based on a discrete act is timely if raised within one year of the discrete act. *Id.* A hostile

work environment claim based on aggregated acts is timely if raised within one year of the last aggregated act.  *Roa v. Roa*, 200 N.J. 555, 569-70 (2010).

Defendants attack Fredericks's CEPA claim in two ways.  First, they argue that the alleged acts of retaliation are either time-barred or too "*de minimis*" to constitute "adverse employment actions."  Second, they argue that the CEPA claims against Mayor Turner fail because Fredericks's allegations are conclusory and because Mayor Turner is not an "employer" for purposes of CEPA.

### i. Discrete Adverse Employment Actions

Not paying Fredericks for his tax abatement work and not providing him with a raise he was entitled to are both adverse employment actions because they impact compensation.  *See Caver*, 420 F.3d at 255.  But only the claim related to tax abatement work is timely under CEPA's one year statute of limitations.

Under Title 40A of the New Jersey Statutes, New Jersey municipalities must provide tax collectors with the same raise "given to all other municipal employees" unless they have "good cause" for the different treatment.  Compl. ¶ 15 (quoting N.J.S.A. 40A:9-165).  On June 30, 2010, other Township employees saw their salaries increase 4%; Fredericks's salary stayed the same.  *Id.* ¶ 15.  If Fredericks knew or should have known about his co-workers' raise on June 30, 2010, *see Hall v. St. Joseph's Hosp.*, 343 N.J. Super. 88, 103 (App. Div. 2001), he waited too long to bring his CEPA claim.  *See Piper v. UMDNJ*, 2011 WL 2314401, at *5 (App. Div. June 8, 2011) (reduction in salary was discrete adverse employment action triggering the statute of limitations).  Fredericks filed this case on September 16, 2011, more than one year after June 30, 2010.  Therefore, the CEPA claim based on Fredericks's raise is untimely.  If Fredericks only learned of the raise on or after September 16, 2010—or if he could not have been expected to know about it before that date—then his claim is timely, and he may amend his pleading accordingly.

The CEPA claim relating to Fredericks's back-pay, however, is clearly timely.  On August 2, 2010 and again on September 17, 2010, Fredericks wrote Town Manager Marchetti requesting back-pay he was promised for certain tax abatement work.  After Fredericks signed the Certification on September 20, 2010, his request was denied.  This denial started the clock running for limitations purposes, since it was only when he received the denial that he knew his

compensation was not forthcoming.  As the denial occurred within one year of this suit, the CEPA claim related to Fredericks's back-pay is timely.[3]

### ii.  Hostile Work Environment

The four remaining acts of retaliation do not qualify as discrete adverse employment actions.  When considered together, however, they state a claim for a hostile work environment under CEPA.

Defendants are correct that four acts identified by Fredericks do not constitute adverse employment actions under CEPA.  There is no allegation that Fredericks's compensation was affected when Defendants interfered with his ability to attend seminars that he had attended for years.  *See Caver*, 420 F.3d at 255 (adverse employment actions affect compensation or rank).  And while it might be unpleasant for Fredericks to route his communications through another person, unpleasantness alone does not suffice to state a claim under CEPA.  *See Beasley*, 873 A.2d at 685 ("Adverse employment actions do not qualify as retaliation under CEPA 'merely because they result in a bruised ego or injured pride on the part of the employee'").  Furthermore, while both of Town Manager Marchetti's threats concerned pay, Fredericks does not allege that either threat was carried out.  Since the threats were not "completed acts" with respect to compensation, they do not constitute adverse employment actions under CEPA.  *See Caver*, 420 F.3d at 255.  Individually, none of these four acts "materially alter[ed] the employee's terms and conditions of employment or adversely affect[ed] [his] status as an employee." *Cortes*, 391 F. Supp. 2d at 312.

But these four acts, considered together, state a claim for a hostile work environment under CEPA.  An employee states a hostile work environment claim under CEPA when he demonstrates "a pattern of retaliation serious enough to work a material adverse change in an employee's work conditions." *Id.* (quoting *Wanamaker*, 108 F.3d at 464).  To survive a motion to dismiss, an employee must demonstrate that "the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." *Blevis v. Lyndhurst Bd. of Educ.*, No. 6-4857, 2009 WL 3128402, at *11 (D.N.J. Sept. 28, 2009) (internal citations and quotations omitted).  Fredericks's allegations of

---

[3] Fredericks also seeks to recover the annual salary he was supposed to receive for his tax abatement work.  The Complaint states that "[a]fter July 1, 2010, the salary [for tax abatement work] would be $7,800 annually."  Compl. ¶ 13.  If Fredericks knew or should have known before September 16, 2010 that he was not going to be paid this compensation, he cannot recover salary payments for his tax abatement work under CEPA.

compensation-related threats, interference with educational opportunities, and restrictions on his ability to communicate, when considered together, combine to state a claim for a hostile work environment under CEPA because they describe a workplace that is "hostile or abusive." *Id.* Finally, the claim is timely since the last aggregated act—Town Manager Marchetti's last threat—was made within one year of this lawsuit. Compl. ¶ 19[4]; *see also Roa*, 200 N.J. at 569 (hostile work environment claim timely if last aggregated act occurs falls within limitations period).

### iii. CEPA Claims Against Mayor Turner

Defendants argue that Fredericks has not stated a CEPA claim against Mayor Turner for two reasons: the Mayor is not an "employer" for purposes of CEPA, and the allegations against him are conclusory. The Court disagrees.

CEPA provides a cause of action where an "employer" retaliates against an employee. N.J.S.A. 34:19-3. Mayor Turner is an employer for purposes of CEPA. Pursuant to N.J.S.A. 34:19-2(a), an "employer" is "any individual … or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent." Defendants suggest that Mayor Turner could not have influenced decisions about Fredericks's pay because Mayor Turner's job description bars him from doing so. Def's Br. 8. Defendants' argument is creative but mistaken. In construing the term "employer," the Court "must look to the goals underlying CEPA and focus not on labels but on the reality of plaintiff's relationship with the party against whom the CEPA claim is advanced." *Feldman v. Hunterdon Radiological Associates*, 187 N.J. 228, 241 (2006) (construing the term "employee" for CEPA purposes). According to the Complaint, Mayor Turner controls the day-to-day activities in the Township. Therefore, the Mayor is an employer for purposes of CEPA. *See Hillburn v. Bayonne Parking Auth.*, No. 7-5211, 2009 WL 235629, at *8 (D.N.J. Jan. 30, 2009) (City of Bayonne was an employer under CEPA because it "effectively controlled" the distinct legal entity that employed plaintiff).

The CEPA claim also survives against Mayor Turner because Fredericks has alleged sufficient facts to "allow[] the court to draw the reasonable inference that [Mayor Turner] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As noted earlier, the Court considers the Certification at the motion to dismiss stage because the document is "integral to or explicitly relied upon in the complaint." *Lum*, 361 F.3d at 222 n.3. In the Certification, Fredericks states that "despite his

---

[4] The Complaint contains two paragraphs labeled "19". Here, the Court means to refer to the second of those paragraphs.

ceremonial role, Mayor Turner is in fact the government official who actually controls every department in town." Certification ¶ 5. He adds that Mayor Turner has knowingly ordered the Township's tax assessor to assess illegally high taxes on luxury waterfront properties. *Id.* ¶¶ 6-7. Moreover, Mayor Turner "routinely" calls Fredericks "whenever taxes need to be formulated," and Mayor Turner has ordered Fredericks to manipulate the garbage levy. *Id.* ¶ 8. Fredericks has complained to Town Manager Marchetti for years, but to no avail. *Id.* ¶ 9. If true, these facts make it plausible that Mayor Turner played a role in the alleged acts of retaliation. The CEPA claims against Mayor Turner survive.

Accordingly, the motion to dismiss Count I is **GRANTED** in part **AND DENIED** in part. Fredericks may seek relief against all Defendants for two alleged violations of CEPA: withholding back-pay and creating a hostile work environment. The CEPA claims concerning (1) the interference with his ability to attend seminars, (2) the requirement that Fredericks route his communications through another person, and (3) the threats allegedly made by Town Manager Marchetti are **DISMISSED WITH PREJUDICE**, as amendment would be futile. The CEPA claim relating to Fredericks's raise is **DISMISSED WITHOUT PREJUDICE**. As it is possible that Fredericks could allege a timely CEPA claim based on his raise, the Court will permit him to amend his Complaint accordingly.

### B. 42 U.S.C. Section 1983 (Counts II and III)

Count II, brought against the Township, and Count III, brought against Mayor Turner and Town Manager Marchetti, both allege violations of 42 U.S.C. § 1983 ("Section 1983"). Specifically, Fredericks claims that Defendants violated his First Amendment rights to speech, petition, and association. Defendants arguments to the contrary fail uniformly. The Court will **DENY** the motion to dismiss Counts II and III.

#### i. Speech

Frederick has stated a claim under Section 1983 for the violation of his speech rights under the First Amendment. *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the freedom of speech. . . ."). Defendants three arguments to the contrary all fail. First, Defendants argue that the Complaint fails to allege that Fredericks was actually deterred from acting as he pleased. This is correct but irrelevant for purposes of the motion to dismiss. Second, Defendants claim that Fredericks has not demonstrated a causal link between his speech and any alleged retaliatory act. Fredericks has alleged sufficient facts to survive a

motion to dismiss.  Third, Defendants argue that the speech at issue does not concern a matter of public interest.  Again, they are mistaken.

A public employee seeking relief under the Speech Clause must show: "(1) that he engaged in a protected activity; (2) that Defendant's adverse retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights; and (3) that there was a causal link between the protected activity and the retaliatory action."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  The first question is a matter of law, while the additional questions are matters of fact.  *Von Rhine v. Camden County Sheriff's Office*, No. 9-6093, 2012 WL 3776026, at *6 (D.N.J. Aug. 29, 2012).

Defendants argue that "there is no indication [in the Complaint] of how Plaintiff was deterred from doing anything."  Defs.' Br. 14.  But the question is not whether Plaintiff *was* deterred from acting in a certain way; the question is whether Defendants' conduct "*could* deter a person of ordinary firmness from availing herself of her First Amendment rights."  *R.K. v. Y.A.L.E. Schools, Inc.*, 621 F. Supp. 2d 188, 197 (D.N.J. 2008) (emphasis added); *see also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007) ("Plaintiffs need not show they were actually deterred from exercising their right to free speech, but rather must show the actions were 'capable of deterring a person of ordinary firmness from exercising his or her right[s].'") (internal citation omitted). Withholding compensation, for example, could deter a person from exercising his First Amendment rights.

Next, Fredericks has adequately pled causation.  Defendants correctly argue that a Section 1983 claim succeeds only if Fredericks's speech was a "substantial factor in the alleged retaliation."  Defs.' Br. 14 (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005); *cf. St. Louis v. Morris*, 573 F.Supp.2d 846, 852 (D. Del. 2008) (Plaintiff can demonstrate "a causal link" by demonstrating that "his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.") (internal quotations and citations omitted).  Fredericks has alleged that Defendants' retaliatory acts were "a result of protected activities." Compl. ¶ 20.  While this statement is conclusory, it is buttressed by the timeline: all of the allegedly retaliatory acts occurred within two months of Fredericks signing the Certification.  Compl. ¶¶ 10-20; *cf. Lauren W*, 480 F.3d at 267 (causal connection can be established by "an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action").  It is further supported by the allegations that Mayor Turner ordered illegal acts, that Mayor Turner runs the day-to-day operations of the Township, and that Town Manager

Marchetti has not or could not act on Fredericks's complaints.   Compl. ¶ 8; Certification ¶ 5.  Fredericks has pled sufficient facts to establish causation.

Finally, the speech at issue implicates a matter of public concern.  A public employee's speech is protected when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).  Defendants argue that the Complaint "does not give sufficient specifics to determine whether there is a private or public interest involved."  Defs.' Br. 13.  It does. Fredericks's Certification alleges that Mayor Turner exerts improper influence over Township affairs, in violation of New Jersey law, and that he has knowingly ordered Township employees to assess illegally high taxes.   If the subversion of the political process and the assessment of illegal taxes are not matters of public concern, it is difficult to imagine what could be. *See Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) (speech is a matter of public concern where it identifies "wrongdoing on the part of one exercising public authority that would be relevant to the electorate's evaluation of the performance of the office of an elected official.").  Accordingly, Fredericks has stated claims under Section 1983 for the violation of his speech rights under the First Amendment.

### ii.  Petition

Fredericks also asserts a Section 1983 claim under the Petition Clause of the First Amendment.  *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.").  While "there is [not] always an essential equivalence" between the Speech Clause and the Petition Clause, *Borough of Duryea, Pa. v. Guarnieri*, 131 S.Ct. 2488, 2495 (2011), the parties assume the equivalence holds in this case. Accordingly, the Court will **DENY** the motion to dismiss the Section 1983 claims alleging violations of Fredericks's petition rights.

### iii.  Association

Lastly, Fredericks seeks relief under Section 1983 for the violation of his rights to association under the First Amendment.   *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people to peaceably assemble . . . .").  Fredericks may proceed with his freedom of association claims.

As Defendants correctly note, the Supreme Court's freedom of association jurisprudence divides into two strains. One strain, not relevant here, concerns intimate relationships. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617 (1984). The other strain recognizes "a right to association for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* In *NAACP v. Button*, the Supreme Court appealed to the freedoms of expression and association in striking down a Virginia law that made it a crime to "advise[] another that his legal rights have been infringed and [to] refer[] him to a particular attorney or group of attorneys." 371 U.S. 415, 434, 437 (1963). In *Owens v. Rush*, the Court of Appeals for the Tenth Circuit read *Button* to stand for the proposition that government may not retaliate against someone for "'assisting litigation vindicating civil rights." *See Owens v. Rush*, 654 F.2d 1370, 1379 (10th Cir. 1981); *see also Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (citing *Button* for the proposition that providing legal assistance to fellow inmates is protected by First Amendment's freedom of association guarantee); *McCormick v. City of Lawrence*, 253 F. Supp. 2d 1156, 1168 (D. Kan. 2003) (First Amendment right to freedom of association violated where government retaliates against plaintiff for seeking legal advice).

Here, Fredericks "assist[ed] litigation based on civil rights" by signing the Certification. The DeCosmis litigation, brought under Section 1983, alleges that Lieutenant DeCosmis was retaliated against after he complained that a Township parking lot, which was purchased with a State grant, was being developed for private purposes. DeCosmis Compl. ¶¶ 19-24. Assuming the public concern requirement applies to First Amendment cases alleging violations of the freedom of association, that requirement is met here. Accordingly, the Court will **DENY** Defendant's motion to dismiss the Section 1983 claims alleging violation of the freedom of association.

## C. New Jersey Civil Rights Act (Counts IV and V)

Fredericks also asserts claims under the New Jersey Civil Rights Act for the violation of his speech and petition rights under the New Jersey Constitution. In moving to dismiss these claims, Defendants ask the Court to apply the same tests the Court applied in its First Amendment analysis. Defs.' Br. 14. Fredericks does not oppose this request. Accordingly, as it denied Defendants' motion to dismiss Counts II and III, the Court will **DENY** the motion to dismiss Counts IV and V. *See Zahl v. New Jersey Dept. of Law and Public Safety*, No. 6-3749, 2010 WL 891839, at *6 n.1 (D.N.J. March 10, 2010) (applying the First Amendment test to

Petition claims brought under the New Jersey Constitution where "no party has made an argument to differentiate the two").

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.  Under Count I, Fredericks may proceed with (a) the CEPA claim based on his withheld back pay, and (b) the CEPA claim for a hostile work environment.  With one exception, the motion to dismiss all other CEPA claims is **GRANTED**, and the claims are **DISMISSED WITH PREJUDICE**. The one exception is that the CEPA claim based on Fredericks's raise is **DISMISSED WITHOUT PREJUDICE**.  The motion to dismiss Counts II-V is **DENIED.**    Fredericks will be given 30 days to file an amended complaint consistent with this Opinion.  An appropriate order follows.

_____/s/ William J. Martini_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: November 15, 2012**